61  302
166  18

61  302
25 SC ²373
25 SC ¹⁰375
61  302
213  ⁹256
29 SC  96

61  302
32 SC ⁵322

61  302
223  ¹113
223  ⁹114

61  302
40SC¹⁰571

## Seely *et al. versus* Alden.

1. In general the rule for the measure of damages in tort is actual compensation for the injury and whatever contains this is proper evidence.

2. Inadvertent or unintentional injuries unaccompanied with violence draw after them only their direct and immediate consequences, not those remote or speculative; grossly negligent or malicious acts may be the subject of larger damages.

3. For inadvertent or unintentional injuries unaccompanied with violence, the damages are merely compensatory: in those grossly negligent or malicious, damages rest in the sound discretion of the jury uninfluenced by prejudice or passion.

4. Damages for injuries to property vary according to the nature of the claimant's right.

5. The owner of the freehold may recover for an injury which permanently affects his property: one having only a possessory right may recover for an injury to his use or enjoyment.

6. If land be under lease, the tenant and the owner could each recover the amount of his loss for an injury which affects the annual profit and also depreciates the value of the land.

7. If the owner be also occupier he cannot recover damages for use and also for permanent injury.

8. In an action by the owners of a water-power against an owner of a tannery higher up the stream, for permitting tan to be conveyed into the plaintiffs' pool, evidence both of the value of the land with and without the deposit and of the cost of removing the deposit is admissible.

9. The cost of removing the deposit would be the measure if it should be less than the difference in the value of the land; if greater the difference of the value would be the measure.

10. If there be different modes of measuring damages depending on the circumstances, the evidence should be heard and the jury instructed according to the nature of the case.

11. There were a number of mills, &c., besides the defendant's from which refuse matter was carried into the stream. The defendant was liable only for the injury from tan from his works.

12. Little Schuylkill Navigation Co. *v.* Richards, 7 P. F. Smith 142, recognised.

March 10th and 11th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Wayne county:* No. 186, to January Term 1869.

This was an action on the case, commenced December 26th 1864, by Franklin A. Seely, Henry M. Seely and George D. Seely against Levi H. Alden. The plaintiffs were owners in fee of a water-power and dam on the Lackawaxen creek, and the defendant was the owner and occupier of a tannery higher up the stream.

The declaration charged the defendant with throwing tan-bark into the stream, "which, being carried down by said stream, has been deposited upon said lands and in said mill-pond of the plaintiffs, thereby filling up and obstructing said pond, interfering with the free and beneficial use by said plaintiffs of the waters of the

[Seely *v.* Alden.]

said west branch of the Lackawaxen, and *permanently injuring* the value of all said property belonging to said plaintiffs, to the damage of said plaintiffs," &c.

On the trial before Barrett, P. J., the defendant admitted that he had been in the habit of discharging tan-bark into the stream, and that a portion of it had been deposited into the plaintiffs' pool. The plaintiff proposed to ask a witness " at what he estimated the value of the property as affected by the deposit as compared with the value of the property without the obstruction." Also, " How much it would cost to remove the tan-bark deposited in the pool ?" Also, " What the whole extent of the injury was in market value, or otherwise, during and at the expiration of the time aforesaid, as measured by dollars and cents ?"

All these questions were objected to by the defendant, rejected by the court, and several bills of exceptions sealed. There was other evidence of damage to his pool, &c.

The defendant gave evidence that there were a number of other mills, tanneries, &c., on the stream above the plaintiffs' dam from which tan-bark, shavings, saw-dust, &c., are discharged into the stream.

The plaintiffs asked the court to charge, " that the proper measure of damages in this case, is the difference between what the property would have sold for as affected by the deposit of tan-bark in plaintiffs' dam and what it would have brought unaffected by it."

The court charged :—

" The title in the plaintiffs is admitted. It is also admitted that the defendant is the owner of a tannery; and that he has, since 1853 and up to the commencement of this suit, been in the habit of discharging into the stream more or less tan-bark, and that a portion of it found a deposit in plaintiffs' mill-dam. The defendant admits the trespass and his liability for nominal damages.

" This leaves nothing to go to the jury but the question of damages. They have viewed the grounds and heard the evidence. If the plaintiffs are entitled to more than nominal damages, it is the duty of the jury to find the amount.

" [The true measure of damages under the law, is the actual amount sustained by the plaintiffs during the years complained of. The value of the water-power during that period, as it was, or might have been enjoyed by the plaintiffs unaffected by the deposit of tan-bark, and its value as affected by it, is a correct rule for estimating damages.] All the inconveniences to which the use of the water-power was subjected should be considered. If it caused delay or trouble in getting logs to the mill, that is a fair item to consider. If it obstructed the gates or water-courses, or if it lessened the capacity of the pool for holding water or storing logs, it was an injury to the enjoyment of the property. If the

[Seely *v.* Alden.]

mills had to stop for the purpose of clearing out the deposit, it would cause delay and hindrance, and therefore form an item in measuring damage. If there was an annual amount of damage done during those years, you may estimate it in that way. [The plaintiffs should be compensated for whatever inconvenience they were subjected to in the enjoyment of their rights during those years.] The actual damage sustained is the true rule, and should form the basis for your verdict.

" [The value of the real estate before and after the alleged injury cannot be considered. The difference in value is not the correct rule.] We have been asked so to instruct you, but decline to do so.

" The plaintiffs are entitled to your verdict for nominal damages under any view you may take of the evidence. If actual damage has been sustained, they are entitled to your verdict for that amount, with interest upon the amount at least from the bringing of this suit."

The verdict was for the plaintiffs for $1450.

He took a writ of error and assigned for error,

1, 2 and 3. The rejection of their several offers of evidence.

4. Refusing to affirm their point.

5, 6 and 7. The parts of the charge included in brackets.

*G. M. Harding* (with whom were *C. S. Minor* and *H. M. Seely*), for plaintiffs in error.—Compensation must be equivalent to the injury: Bussy *v.* Donaldson, 4 Dallas 207; Rockwood *v.* Allen, 7 Mass. 254; Leland *v.* Stone, 10 Id. 459; Weld *v.* Bartlett, Id. 470; Worster *v.* Canal Bridge, 16 Pick. 541; Perry *v.* Goodwin, 6 Mass. 499; Payne *v.* Brittenham, 1 A. K. Marsh. 591; Park *v.* Hopkins, 2 Bailey 408; Harvey *v.* Huggins, Id. 252; Walker *v.* Smith, 1 Wash. C. C. 152; Bateman *v.* Goodyear, 12 Conn. 575. The injury is to the freehold, the depreciation of its value is the measure of damages: Hart *v.* Evans, 8 Barr 22; Ripka *v.* Sergeant, 7 W. & S. 14. The cost of removal would furnish a measure of compensation: McKnight *v.* Ratcliff, 8 Wright 164. The damages must be the legal and the natural consequence of the tort: Crain *v.* Petrie, 6 Hill 524; 1 Chitty's Pl. 395, 396; 1 Saunders' Pl. and Ev. 344; Vicars *v.* Wilcocks, 8 East 1. The point of defendant contains the recognised rule: Schuylkill Nav. Co. *v.* Thoburn, 7 S. & R. 422; McGuire *v.* Grant, 1 Dutcher's R. 356.

*G. G. Waller* and *S. E. Dimmick*, for defendant in error, referred to McKnight *v.* Ratcliff, *supra.*

The opinion of the court was delivered, May 11th 1869, by
AGNEW, J.—In general the rule for the measure of damages in

[Seely v. Alden.]

cases of tort may be said to be that which aims at actual compensation for the injury; and whatever ascertains this is proper evidence to be submitted to the jury: McKnight v. Ratcliff, 8 Wright 168; John B. Douty et al. v. Joseph Bird et al., 10 P. F. Smith 48; Forsyth v. Palmer, 2 Harris 98; Hart v. Evans, 8 Barr 22; Walker v. Smith, 1 Wash. C. C. R. 154; 4 Dallas 206. There are qualifications, however; as that inadvertent or unintentional injuries, or acts unaccompanied with malice draw after them only their direct and immediate consequences, and not those remote and speculative; while grossly negligent or malicious acts may be the subject of larger damages. In the former the damages are merely compensatory; but in the latter they rest in the sound discretion of the jury, uninfluenced by prejudice or passion. Damages for injuries to property vary also according to the nature of the claimant's right. The owner of the freehold may undoubtedly recover for an injury which permanently affects or depreciates his property; while a tenant, or one having only a possessory right, may recover for an injury to his use or enjoyment of it: Ripka v. Sergeant, 7 W. & S. 9; Schnable v. Koehler, 4 Casey 181; Robb v. Mann, 1 Jones 305; Williams v. Esling, 4 Barr 486. The court below erred, therefore, in confining the proof of damages of the plaintiffs to the mere use of the water. Being the owners of the property, as well as in its actual possession and use, they had a right to all the damages flowing directly from the tort of the defendant. If, therefore, a permanent injury was created by the lodgment of the tan-bark in the pool of their dam, which actually depreciated the property in value as a water-power, it must affect the price or value of the land to which it belonged; and why should this not be compensated in damages? It is difficult to give a good reason against it. The plaintiffs in that case have lost just so much in the value of their property by the illegal act of the defendant. Compensation for the diminished enjoyment or use of the property for a certain number of years, is no compensation for the diminished value of the estate itself. The profit of the land must not be confounded with the land itself. If the land were under lease, an injury which diminished its annual profit to the tenant, and also depreciated the value of the property itself, would be the subject of a double action, in which the tenant and the landlord would each recover the amount of his own loss. Of course when an owner claims in both capacities he cannot be allowed a double compensation for the same loss; so that the damages for use must not represent in any part the damages for the permanent injury. It is the duty of the court to see that one does not overlap the other.

We think the court erred also in refusing to admit both methods of computing the permanent damages, to wit, that which

11 P. F. Smith—20

[Seely *v.* Alden.]

measures the damages by the different values of the land, with and without the deposit; and that which measures them by the cost of removing the deposit. It is often difficult for a court to determine the true measure until all the evidence is in. It may turn out that the cost of removing the deposit in a certain case would be less than the difference in the value of the land, and then the cost of removal would be the proper measure of the damages; or it may be that the cost of removal would be much greater than the injury by the deposit, when the true measure would be the difference in value merely. If there be different modes of measuring the damages, depending on the circumstances, the proper way is to hear the evidence, and to instruct the jury afterwards according to the nature of the case. The argument of the defendant in error is, that the injury is only temporary, the tan-bark being light and removable by freshets. But this assumes the fact. The plaintiffs declared upon the deposit as an injury to their freehold, alleged it to be permanent in its character, and offered evidence to this effect. The fact was one to be decided by a jury; but in assuming that the injury was only to the use of the property for a certain period of time, the court withdrew the fact of permanency. If the deposit was of a temporary character it was the subject of proof, and the defendant's right to an instruction to the jury to confine the damages to the use during its temporary existence, depended on the finding of the fact. The *extent* of the injury was also a fact for the jury. Whether temporary or permanent, the defendant is liable only for the tan-bark cast into the stream by him, which found its way into and lodged in the pool of the dam. If others above on the stream contributed to the deposit of tan bark or other matter in the pool, the defendant cannot be held liable for their injury, but his deposit must be separated by means of the best proof the nature of the case affords, and his liability ascertained accordingly. This point has been discussed and decided at January Term 1868, in the case of The Little Schuylkill Nav. and Railroad and Coal Co. *v.* Richards' Adm'r., from Schuylkill county: 7 P. F. Smith 142.

Judgment reversed, and a *venire facias de novo* awarded.