# Williams *v.* Fulmer, Appellant.

# Williams, Appellant, *v.* Fulmer.

*Navigable rivers—Water power—Riparian rights—Damages.*

A riparian owner on a navigable river has no right to the water power, and therefore cannot recover for loss of such power from obstruction and diversion of water, by neighboring owner, whether above or below low water mark.

But a riparian owner on a navigable river can recover from a neighboring riparian owner for injury to his property by reason of the diversion of the stream from its natural channel in front of his land; and if malice be shown, exemplary damages may be given.

Compensatory damages in such case would be the depreciation in value of the property, if the injury were permanent, or the cost of removing the obstruction, whichever was the lower amount.

Argued Feb. 1, 1892.    Appeal, No. 266, Jan. T., 1891, by plaintiff, David Williams, and No. 226, Jan. T., 1891, by defendant, Henry Fulmer, from judgment of C. P. Lehigh Co., Jan. T., 1884, No. 65, on verdict for plaintiff.    Before Paxson, C. J., Green, Williams, Mitchell and Heydrick, JJ.

Trespass on the case for damages for diverting water of navigable river.

The facts appear by the opinion of the Supreme Court.

Plaintiff proposed to prove by a witness that from September, 1864, he was the owner in fee simple, and in the exclusive and uninterrupted possession of a tract of land along the western side of the Lehigh river, and was in such possession at the time of the grievances complained of, and that he was also the owner and possessor of the island in the Lehigh river, immediately opposite the lands before referred to, and that between the island and the main land there passed a portion of the waters of the Lehigh river, there being a channel of from eighty to one hundred feet wide; that some ten years before the bringing of this suit the plaintiff erected upon his land, close to the Lehigh river, but above high water mark, on this western branch of the stream, a school slate factory, and built a small dam across the arm of the Lehigh river, between the plaintiff's island and the main shore; that at that time the plaintiff and Henry Harper were the owners of the land on the western

shore of the Lehigh, above the lands now owned by the plaint-
iff, viz.: the lands now owned by the defendant, and on which
the wrongs complained of in this suit were committed; that
while Williams & Harper were the owners of the Fulmer tract
of land the dam was erected, with the consent, knowledge and
permission and request of Henry W. Harper, then the joint
owner with David Williams of the Fulmer land; that the dam
so erected was maintained and at the time of the bringing of
this suit existed as it had been from the time it was first built
when Henry Fulmer, and those under whom he claims, pur-
chased the title of Henry Harper, part of the Fulmer tract;
that the dam was visible and apparent; that the dam did not
at any time operate to divert or draw any of the water of the
Lehigh river out of its natural course or channel, and that it
did not in any way interrupt, impede or interfere with the
navigation of the Lehigh river, or any of its parts; that the
Lehigh Coal and Navigation Company, holding from the com-
monwealth the exclusive right itself, and those to whom it
granted permission to use all the water power of the Lehigh
river, and to build dams for that purpose, knew of the exist-
ence of this dam and made no objection to its maintenance,
but frequently consulted and conferred with the plaintiff as to
the rental he should pay for the use of the water.    Plaintiff
proposed to prove that along this western bank of the Lehigh
river and at his factory, he put in a turbine water-wheel some
six or eight years before the injury complained of, the water-
wheel being at a point between high and low water mark,
and that the putting in of the wheel did not interfere with the
navigation of the stream; that from this water power the plain-
tiff operated the machinery of his mill, employing from one
hundred and fifty to two hundred hands; that in 1881, be-
fore the commencement of this suit, Mr. Fulmer, the defend-
ant, deposited and dumped the refuse and rubbish of his slate
quarry to the extent of thousands of tons into this branch or
arm of the river at a point above the lands of the plaintiff, and
that before this suit was brought this deposit of rubbish ex-
tended beyond low water mark, and almost entirely across the
channel of the river, thus preventing the flow of the water
through said arm as it had been accustomed to flow, gradually
reducing the quantity of water that flowed through the chan-

nel, so that there was not sufficient to furnish the power for propelling plaintiff's mill.   Plaintiff proposed to follow this up by proof that by the diversion of said water and the filling up of the said channel the plaintiff was damaged—the market value of his property decreased, and he deprived of the use of the said water for the purposes stated.

Objected to :  (1) as incompetent and irrelevant ;  (2) because the plaintiff, as owner of the shore, has no ownership in the water of the Lehigh river, growing out of or appurtenant to his title to the shore ;  (3) the Lehigh river being a navigable river by the laws of Pennsylvania, the owner of the shore has not, as such, any right of property in the water flowing in the river, and has no right to any water power in said river, or to any use of it, other and distinct from those vested in him as a citizen of the commonwealth.

The Court: It has been decided in this case, that the plaintiff has no title to any water power derived from the river Lehigh.   The objection is sustained.   Plaintiff excepts; bill sealed.   [1, plaintiff.]

Plaintiff then renewed the offer, with this modification : Withdrawing from the offer of proof the existence of a water power by reason of a dam thrown across the river, he proposed to prove that the formation of the bed of the stream opposite the factory of the plaintiff was such that without the erection of a dam or encroaching upon the stream, even beyond or below high water mark, there existed a natural water power, and that the mere flow of the water that naturally passed through the arm of the Lehigh between the island and the main land was sufficient to drive an undershot water-wheel, moved by the current in time of ordinary high water, the wheel to be located between high and low water mark, in such a way as not to interfere with the rights of the public in the navigation and use of the river, or to injure, in any way, or to interfere with the rights of any riparian owner, above or below, and that this power, that could be so utilized, was destroyed and rendered unavailable by the unlawful acts of the defendant, as set forth in the preceding offer of proof, which, in all other respects but the one last stated, the plaintiff asked to be considered as part of the present offer.

Objected to, for the same reason as given in the case of the preceding offer.

The Court: If the plaintiff proves, that by placing an under-shot wheel between high and low water marks a valuable power is created, and that defendant's unlawful acts deprived him of that power, can the jury be told that the plaintiff may recover if they find that the wheel would not obstruct navigation? For, if the question of obstruction cannot be submitted as a matter of fact for the determination of the jury, then such injury must be deemed to have been *damnum absque injuria.* The strip between high and low water marks is as much a part of the highway as the middle of the stream is, for, when the water is high, there may be navigation there. I conceive that it cannot be submitted to the jury to say that a part of the public highway may be obstructed, except temporarily by municipal regulation, simply because it does not interfere with the public's use, and that for interference with such an obstruction, the erector thereof may recover damages. I understand the decisions of the Supreme Court upon this subject, including that rendered in this case, to be, that no one may lawfully place an obstruction in a navigable stream even below high or low water mark. An undershot wheel, such as is described in the offer, is an obstruction. No matter how it is constructed, it must touch the water and be in the highway. It differs from a dam only in the extent of the obstruction created. The objection is sustained and the evidence excluded; bill sealed for the plaintiff. [2, plaintiff.]

Plaintiff gave in evidence, under objection and exception, declarations by defendant that he intended to "law plaintiff until he was poor." [20]

The court charged in part as follows, by ALBRIGHT, P. J.:

["The mere filling in by the defendant, Mr. Fulmer, even beyond low water mark, in itself, gives no right to Mr. Williams, the plaintiff, to recover damages. Inasmuch as he is an owner on a public stream, the mere stoppage of the water, without showing anything more, would not entitle him to recover. But if he has shown that unlawful act—that the filling in with slate rubbish beyond low water mark—was done or caused to be done by the defendant, and that he, the plaintiff, was injured by it in the enjoyment and use of his property, then he may recover. I will repeat here, that in considering the use of his property you must exclude all idea of the water power,

because he had no right to that, and you must exclude also such use of the stream as he had a right to in common with every other citizen.　But he can recover for any peculiar injury to his property resulting from the defendant's interference with the stream, as the plaintiff had the right to have and use that stream.] [14] . . . .

"It has been argued strenuously that Williams, the plaintiff, cannot recover unless he shows that not only he, but the people generally in the neighborhood were damaged; in other words, that only by showing this was a public nuisance, and that he sustained special injury can he recover.　[My view of the law is that such a rule would be too narrow, and that if there is an obstruction of a stream which is a public highway beyond low water mark, and even although it does not affect the whole community so as to amount to a public nuisance, yet that an owner on the shore who has been specially injured may recover damages.] [15] . . . . [I can conceive of a case where lands might be owned in large tracts, and where the ground might be comparatively flat and level, and with a stream which is a public highway flowing through it, and where one man by damming up the stream and digging a trench might take away the stream entirely from his neighbor, and then bring it back again to its natural bed below his neighbor's land, and nobody might be affected by it except that neighbor.　In such a case as well as in this case, in my estimation, the injured party can recover.] [16] . . . .

["Williams, the plaintiff, had no right to any water power by means of a dam and turbine wheels to drive the machinery in the factory, and did not have the right even to place an undershot wheel in the stream between high and low water mark.] [4, plaintiff.]　[But, as between him and the man who owned the property immediately above him, so far as that upper owner's right was concerned, to fill in beyond low water mark, I say to you that Mr. Williams had a right to have the stream flow past his property in its natural channel, as it would have flowed if there had been no filling in beyond low water mark.　And if you find that the presence of the stream there, as it would have been if the defendant had not filled his rubbish into the stream beyond low water mark, was a benefit to the property of Williams, and that the taking away of it, if it

was taken away, by the defendant, was an injury, and if that injury was a material one—more than a mere nominal one of a cent, or a few cents—then you may say that the plaintiff can recover for the injury done to his shore property.] [17]

[" Was the property injured by what the defendant did, and, if it was, how much, and what would it cost to remove the rubbish which was thrown in the stream when the suit was brought beyond low water mark ?] [18] . . . .

[" If you reach this question you will ascertain (if the property of the plaintiff is damaged, and if the injury is permanent,) which is the lower amount, the depreciation, if there was a depreciation, in the real estate, or the cost of removing the rubbish, and the lower sum you will take as the compensatory damages in the case."] [22]

Plaintiff's points were, among others, as follows :

1. Same as 1st point in 122 Pa. 199. [1]

" 2. If the water of the Lehigh river which flowed over the lands of Mr. Williams, between high and low water mark, was diverted from his lands by the unlawful act of Fulmer, and Mr. Williams was deprived of its use for lawful purposes beyond the mere right he had in common with the public, Fulmer is liable for the damages thus inflicted." Affirmed. [2] .

" 3. If the formation of the bed of the stream opposite the factory or property of the plaintiff, between high and low water marks, was such that the mere flow of the stream over it would create a water power that could be used by the plaintiff without diverting the water in any way, and without interfering with the rights of the commonwealth and the public in the stream, he could not be deprived of this advantage by any unlawful act of the defendant, and if the defendant did by an unlawful act so divert the flow of the water from the lands of the plaintiff as to deprive him of this advantage, he is liable for the injury thus inflicted, and must respond in damages therefor." Negatived. [3, plaintiff.]

" 4. While the commonwealth or its grantees have the absolute right and ownership in the water of navigable streams, yet as between riparian owners each one has the right between high and low water mark to all the advantages arising from the flow of the water over such lands which do not interfere with the rights of the commonwealth, its grantees, or the pub-

lic. No riparian owner has the right by any unlawful obstruction in the stream below low water mark to interfere with this advantage, and if he does, he must respond in damages to the owner injured." Affirmed. [3]

" 5. If the flow of the water of this stream along the property of the plaintiff gave it a value beyond its value without such flow, and the plaintiff by his unlawful act has diverted the flow and thus depreciated the value of the property, he must respond in damages for the injury done." Affirmed. [4]

" 7. If the defendant was guilty of an unlawful act and committed the same willfully, intentionally and maliciously with intent to injure and damage the plaintiff, the jury in addition to compensatory damages may add vindictive or exemplary damages as a punishment for such conduct. The amount of exemplary damages rests in the sound discretion of the jury uninfluenced by prejudice or passion." Affirmed. [21]

Defendant's points were, among others, as follows:

" 1. Under all the evidence the verdict must be for the defendant." Negatived. [19]

" 3. In this case it is essential that the plaintiff prove that the alleged encroachment of the dump pile upon the Lehigh river is a public or common nuisance. Such a nuisance is defined to be an act which interferes with the enjoyment of a right which all of the members of the community are entitled to; it must be such an act as affects the whole community in general, and not merely some particular person. *Answer:* This contains a correct statment of what is a public nuisance. But plaintiff may recover as a lower riparian owner, if he was injured as such owner, by the willful, malicious and unlawful act of defendant in dumping beyond low water mark, even if it is not shown that the whole community was injured; it is not essential to show that the dump pile was a common nuisance, in the sense of affecting the community; therefore, the point is negatived." [5]

" 5. Public nuisance, as such, can only be abated by the commonwealth. If a person brings a private action he must show the existence of a common public nuisance, and that he has suffered a special or peculiar injury resulting therefrom. *Answer:* Affirmed as a legal proposition; if a plaintiff complains only of a public nuisance, and special injury to himself,

he must prove what is here stated.    The plaintiff in this case complains not of the commission of what affected the community, but that defendant, as an upper riparian owner, did an unlawful act, to the injury of plaintiff as a lower riparian owner.    If plaintiff has shown what he alleges, he may recover." [6]

" 6. An action for a nuisance in a public highway cannot be sustained unless the plaintiff shows a special or particular injury to himself, different in kind and distinct from that which he suffers in common with the rest of the community. *Answer:* Answered in words of answer to fifth point, which answer is now again read to the jury. [7]

8. Same as 2d point in 122 Pa. 199. [8]

9. Same as 3d point in 122 Pa. 199. [9]

"10. The plaintiff having no grant from the state, has in the soil of the Lehigh river and its banks, below low water mark, no private rights and no riparian rights arising therefrom and cannot recover for any obstruction put in the river above him, that has not in fact obstructed his right to use the river as a navigable public highway.    *Answer:* Negatived; this is in substance a proposition that plaintiff's right to recover for the obstruction must be confined to his right to navigate the stream. This I cannot affirm." [10]

11. Same as 7th point in 122 Pa. 200. [11]

12. Same as 6th point in 122 Pa. 200. [12]

14. Same as 15th point in 122 Pa. 200. [13]

The verdict was for plaintiff for compensation $1,318; exemplary damages $1,175; total damages $2,482, for which amount judgment was entered.    The verdict on the former trial was for plaintiff for $6,831.81.    Both plaintiff and defendant appealed.

*Errors assigned* by plaintiff were (1, 2) rulings on evidence, quoting bills of exceptions; (3, 4) instructions, quoting point and charge, as above.

*Errors assigned* by defendant were (1–19, 21, 22) instructions, quoting them ; and (20) admission of evidence, quoting bill of exception and evidence.

*R. E. Wright,* of *R. E. Wright's Sons,* for plaintiff.

*Edward Harvey, John Rupp* with him, for defendant.

OPINION BY MR. JUSTICE WILLIAMS, October 3, 1892.

These are cross appeals from the same judgment and may be best considered together. The same parties were before us in 1888 with substantially the same questions, and the case is reported in 122 Pa. 191.

The plaintiff is a manufacturer of school slates. His factory is situated on the west bank of the Lehigh river, and prior to 1883 the machinery was propelled by water power. This was obtained by means of a dam thrown across an arm of the river that flowed between an island and the main land on which the factory was located. The dam raised the surface of the water above it from one to two feet, which was sufficient to furnish the power required for the factory.

The defendant owns and operates a slate quarry on land immediately above that of the plaintiff. He has been dumping the refuse from his quarries for many years into the river a little way above the plaintiff's factory. He had in this manner filled up the channel of the arm of the river far beyond low water mark, and had nearly closed the channel into which it flowed. The water was by this means diverted from the front of the plaintiff's land and thrown into the channel on the opposite side of the island, and the water power of the plaintiff was completely destroyed.

This action was brought to recover damages for the destruction of the water power. The defence rested on the general proposition that the Lehigh river was a navigable public highway belonging to the commonwealth; that the plaintiff as a riparian owner had no right to its waters or the power to be obtained from them, but that the state had granted the exclusive right to such water power to the Lehigh Navigation Company which was still its owner. We held that the defence was well taken so far as the water power was concerned; but that the plaintiff was nevertheless entitled to recover for any injury he had sustained by reason of the diversion of the stream from its natural channel along the front of his land; and if any such diversion had been affected with malice toward the plaintiff, or for the purpose of inflicting injury upon him, exemplary damages might also be given. Another trial has now taken place resulting in a recovery for the plaintiff, although for a smaller sum than before. From this judgment both parties have ap-

pealed.   The plaintiff asks us to reconsider our former holding so far as it relates to the water power, and allow a recovery at the very least for the loss of such power as the water flowing between high and low water marks would afford him, in addition to the damages which he has recovered as a riparian owner.   The defendant on the other hand asks us to reconsider our judgment so far as to deny the plaintiff any right to recover damages for the diversion of the stream, and hold him to be remediless.   We must decline to do either.   The plaintiff is without title to the water or the power to be derived from it whether above low water mark or below it.   He used it for years it is true, but the right to use it was in the Navigation Company, the grantee of the commonwealth, and not in him. His use of it could have been stopped at any time.   He cannot recover for that to which he has no title.   But he was the owner of land lying upon a navigable stream.   The advantages of his location were inseparable from the ownership of the land, and if they increased its desirability or added to its value for purposes of business or of pleasure they were his property as truly as the land itself.

The diversion of the stream was an injury to his land that was direct, peculiar, and not shared with the general public. It was as clearly actionable as the diversion of a stream passing over his land.   Whoever brought about such diversion so as to deprive him of the advantages of his location, whatever they were, inflicted a pecuniary wrong upon him.   The manner in which the diversion is brought about is not important. It might be accomplished by means of elaborate works arranged to carry the stream elsewhere, or it might be affected by filling up the channel so as to compel it to seek another.   The result accomplished and the injury inflicted would be the same. The lower riparian owner would be deprived of the natural advantages which ownership of the land at that point gave him, by the unlawful act of another; and he would have a right to call upon the wrongdoer to repair the wrong done him by restoring the stream to its channel or making compensation for its loss.   The learned trial judge followed the rule laid down in Williams v. Fulmer, 122 Pa. 191, and tried the cause with discrimination and ability.

The assignments of error in both appeals are overruled and the judgment affirmed.