## Rabe v. Shoenberger Coal Company, Appellant.

*Mines and mining—Surface support—Injuries to surface—Damages for permanent injuries.*

Where there is a permanent injury to real estate the extent of the damage caused thereby is to be measured by the resulting depreciation in the value of the property; and this rule applies not only where the injury to property is for public use, but also where the issue is between private persons.

In an action of trespass by the owner of the surface of land against a mining company, which in mining the coal has failed to leave sufficient support for the surface, and has destroyed five springs, the measure of damages is the permanent depreciation of the value of the farm caused by the destruction of the springs. The springs cannot be valued as independent pieces of property, but as elements going to make the value of the farm as a whole.

If, in such a case, it appears that the loss of one spring was supplied by piping water from another, the damage in so far as that particular one is concerned is the cost of piping.

Argued Oct. 20, 1905.  Appeal, No. 58, Oct. T., 1905, by defendant, from judgment of C. P. Washington Co., May T., 1903, No. 54, on verdict for plaintiff in case of William T. Rabe v. Shoenberger Coal Company.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEW-ART, JJ.  Reversed.

Trespass to recover damages for injuries to land by alleged negligent mining operations.  Before TAYLOR, J.

The facts are stated in the opinion of the Supreme Court.

On measure of damages the court charged as follows:

[The measure of damage, gentlemen of the jury, in a case of this kind, as laid down by the Supreme Court and the one which you are to follow, is : " For the measure of damages for failure to furnish surface support is the actual loss the owners of the surface have sustained to their land "—the surface in this case including the building thereon,—" by reason of the cave in." The actual loss would mean the real loss, if any, that was sustained by the plaintiff by reason of any springs that he may have lost on this portion of the farm, because the farm as yet is not affected as a whole, but the loss here is confined to some forty or sixty acres, or thereabouts, although I believe the defendant's engineer claimed,—the principal engineer in charge of that mine,—that the coal was only mined out from twenty or twenty-one acres of this plaintiff's farm.] [4]

[When you come to the question of loss here, and damage, because it is not denied that there is some for which the defendant is liable, and they have told you what that was, you take the elements of actual loss, the actual loss to the plaintiff here, and the cost that it would be to him to restore his buildings or his farm, if possible, to make him as good as he was before, is the measure of damages you will apply in this case.  When you come to consider the loss of the spring—you are not bound by any arbitrary estimate that a witness on the one side or the other may place on a spring or the buildings that may be gone or damaged.  You take this farm—this portion of the farm that is in controversy here, and if it would appear to you that there were other springs on this farm that supplied a flow of

water that was sufficient to keep up the supply necessary to carry on the farming, when one of these springs disappeared, it would be for you to say whether the plaintiff would be as much damaged if there was no other water on his place that he could get. And if the spring at the house could be supplied from another spring without diminishing appreciably the supply that was necessary for another part of the farm, the flow through that, would not the actual loss be what it would cost to pipe the water to the house, etc.? That is what I mean when I say you are not bound by the arbitrary estimate of loss that the defendant puts on this plaintiff's spring or springs, or that the plaintiff and his witness themselves may put upon them,—but you are to use your own good judgment, considering all the facts and circumstances in the case, taking that part of the land that is affected by the loss of the springs here for all of the purposes for which it could be used in the shape it was made, for farming purposes and for the laying out of lots. You are to use your own good judgment, gentlemen of the jury, guarded within the lines at least of what the witnesses say on both sides here as to how many cracks there were and how they interfere with the cultivation of the surface, or whether they are of such a nature as would be dangerous for stock running in the field, whether they could be filled up and made as safe as they were before any cracks appeared. What is the extent of damages, by way of actual loss to the surface, if you find his farm left in that condition.] [5]

Verdict and judgment for plaintiff for $6,500. Defendant appealed.

*Errors assigned* among others were (4, 5) above instructions, quoting them.

*W. H. S. Thomson* and *James I. Brownson*, with them *J. W.* and *Alvin Donnan* and *D. W. Kuhn*, for appellant.—For an injury to real estate, the effect of which is permanent, the measure of damages is to be one of two things, viz: (*a*) The cost of remedying it (if remediable) is the measure of damages, provided such cost does not exceed the depreciation in the market value of the property caused by it; but (*b*) if the injury cannot be remedied without expending a sum in excess of the depre-

ciation in the market value caused by the (unremedied) injury, then such depreciation in value is to be adopted as the measure of damages: Seely v. Alden, 61 Pa. 302; Duffield v. Rosenzweig, 144 Pa. 520; Hoffman v. Coal Co., 16 Pa. Superior Ct. 631; Lentz v. Carnegie, 145 Pa. 612; McClay v. Western Penna. Gas Co., 201 Pa. 197.

The duty of the court, in charging the jury, to hold them down to the legal standard for measuring the damages, whenever there is one, and not to leave them free to proceed according to their own private ideas upon the subject, has frequently been spoken of by this court: Penna. R. R. Co. v. Kelly, 31 Pa. 372; Phila., etc., R. R. Co. v. Adams, 89 Pa. 31; Penna. R. R. Co. v. Books, 57 Pa. 339; B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579.

*T. F. Birch*, with him *McIlvain, Vance & Gibson*, for appellee.—If appellant desired to have these damages measured by the rule of difference in market value and thus ignore the ruling of this court in the recent case of Noonan v. Pardee, 200 Pa. 474, it should have said so at the trial of the case in the court below, and the plaintiff would have been willing to have met it on that rule.

OPINION BY MR. JUSTICE POTTER, January 2, 1906:

This was an action of trespass, brought to recover damages for injuries alleged to have been caused to plaintiff's property, by the defendant company. The plaintiff was the owner of a farm in Washington county, near the town of Donora, and the defendant company owned the underlying coal. During the process of mining, and by reason of its failure to leave proper support for the surface, the defendant company injured a portion of the surface for building purposes, interfered with the use of a private road, damaged the dwelling house, and destroyed certain springs of water.

The assignments of error relate solely to the measure of damages. The principal injury of which complaint was made, was the destruction of five springs of water. This injury was permanent and irremediable, as was also any damage to the surface which might render it less available for building purposes. Other injuries, such as the sinking of the dwelling house and

the opening of cracks across the private right of way, were remediable. For the latter, the cost of repair or restoration is obviously the measure of the damage.

The first assignment of error complains of the admission of testimony as to the value of the springs in themselves. This specification is sustained. The value of the springs was only an element in estimating the value of the realty. If the trespass resulted in permanent injury to the realty, the measure of damages is the diminution in the market value of the land. This principle is laid down in Schuylkill Nav. Co. v. Farr, 4 W. & S. 362, where it was held that the measure of damages is (p. 375), " the difference between what the property would have sold for as affected by the injury, and what it would have brought unaffected by such injury." And in McKnight v. Ratcliff, 44 Pa. 156, an action for flooding the shaft of a coal mine, the measure of damages was held to be the actual injury sustained in delay, loss of time, damage to machinery, etc., and if the mine was irreclaimable, then the value of the estate and property.

In Hanover Water Co. v. Iron Co., 84 Pa. 279, it was held that the measure of damages for the diversion of a stream whereby a farm with an ore-bank thereon is injured, was the difference in the market value of the property as a farm and ore-bank, immediately before the diversion of the stream and immediately afterwards as affected thereby.

In Vanderslice v. Phila., 103 Pa. 102, an action for injuries through the bursting of a negligently constructed sewer, Mr. Justice TRUNKEY said (p. 109) : " Compensation for the loss is the measure of damages. Permanent injury done to the buildings, cost of repairs and the loss of rent for the time necessary to make the repairs, are elements affecting the market value, and the difference between that value in their injured condition and such value if uninjured, is compensation."

The sound clear rule is stated in Seely v. Alden, 61 Pa. 302 ; Fulmer v. Williams, 122 Pa. 191 ; Williams v. Fulmer, 151 Pa. 405, and Thompson v. Traction Co., 181 Pa. 131, and is in substance that when the injury is permanent, the measure of damages is the difference in market value, before and after the injury, or the cost of removing the obstruction, whichever is the lower amount.

In the present case the plaintiff had a dairy farm which was unusually well supplied with water.. It had no less than twelve springs on it with water in every field.   Plaintiff claimed that five of the springs were destroyed by the cracks in the land. The question was how much was the farm depreciated in value by the loss of the springs ?   Yet the plaintiff was allowed to estimate the value of the springs as such, and placed one of them at a valuation of $10,000, and the aggregate loss of the springs at $20,000.   There was evidence showing that the loss of one spring was supplied by piping water from another.   If so, then the damage in so far as that one was concerned was the cost of piping.   But in so far as the taking of the springs could not be remedied or made good, the springs should have been valued, not as independent pieces of property but as elements going to make up the value of the farm as a whole.   The farm was not wholly deprived of water, the number of springs had only been lessened.   In just so far as any of them were destroyed, their value would be one of the elements of depreciation to be considered in ascertaining the loss in the selling value of the whole property, caused by the injury inflicted by the defendant company : Kossler v. Pittsburg, etc., Railway Co., 208 Pa. 50.   Counsel for appellant admits that the portion of the charge dealing with the measure of damages for the temporary or remediable injuries, was substantially correct. But it is contended that no adequate rule was given to the jury by which they were to arrive at the damages for permanent injury, and that they were merely told to allow the actual loss. Counsel would have been in better position to complain if specific requests for instructions upon the measure of damages had been presented to the court below, at the trial.   We feel, however, that the charge was not sufficiently specific upon this point.   The jury were told that the plaintiff had the right to recover his " actual loss," but were not told how that actual loss was to be estimated in considering the result of the permanent injuries.   For all such injuries, the rule should have been given to the jury that the measure of damages is the diminution in the market value of the property.   Authority for this statement is ample.   " The general principle upon which compensation for injuries to real property is given, is that the plaintiff should be reimbursed to the extent of the in-

jury to the property.   The injury caused by the defendant may be of a permanent nature; in such a case the measure of damages is the diminution in the market value of the property.   If the injury caused a total or partial loss of the land for a limited time, the diminution in rental value is the measure.   One of these two measures is always applicable.   If the injury is easily reparable, the cost of repairing may be recovered. ⋅ But it must be shown that the repairs were reasonable; and if the cost of repairing the injury is greater than the diminution in market value of the land the latter is always the true measure of damages." 3 Sedgwick on Damages, sec. 932, quoting Seely v. Alden, 61 Pa. 302.   This principle was followed in Fulmer v. Williams, 122 Pa. 191, where a riparian owner, on a navigable river, brought an action against a neighboring riparian owner, for injury to his property, by reason of loss of water power and diversion of the stream from its natural channel in front of his land, by deposit of rubbish and other obstructions.   The trial judge permitted the jury to find damages for loss of water power, and diversion of the stream from its natural course. The measure of damages if the injury was permanent, was said to be the difference in the market value before and after the injury, thus applying the rule of Seely v. Alden, 61 Pa. 302. On appeal the case was reversed on the ground that in the absence of a grant from the commonwealth plaintiff had no right to water power; but it was said he could recover as riparian owner for diversion of water.   The measure of damages was not discussed in this opinion, but in Williams v. Fulmer, 151 Pa. 405, the same questions came up again.   On the measure of damages the trial judge charged that if the injury was permanent, the damages would be the depreciation in value of the property, or the cost of removing the obstructions, whichever was the lower amount.   This was assigned for error.   The judgment was affirmed, this court saying: "The learned trial judge followed the rule laid down in Fulmer v. Williams, 122 Pa. 191, and tried the cause with discrimination and ability."

. It is suggested in the argument here, that the trial court considered the decisions of this court in Robb v. Carnegie, 145 Pa. 324, and McGettigan v. Potts, 149 Pa. 155, as establishing the doctrine, that in no instance, and under no circumstances is depreciation of market value the measure of damages

for any injury to real estate in an action between private parties. That these decisions are not to be so understood was pointed out in Thompson v. Traction Co., 181 Pa. 131, which was an action of trespass against a street railway company which had constructed its railway on a public road in front of plaintiffs' property without their consent. Justice McCollum said (p. 136): " The right of the plaintiffs to compensation for the injury done to their property by the change of grade of the highway in front of it and the construction thereon of the railway is not disputed. The defendant, however, contends that the court adopted a wrong method of ascertaining the compensation they were entitled to receive for the injury thus inflicted. All the specifications of error relate to this contention, and the cases cited as sustaining it are Lentz v. Carnegie, 145 Pa. 612; McGettigan v. Potts, 149 Pa. 155, and Eshleman v. Martic Township, 152 Pa. 68. The rulings and instructions complained of were to the effect that the depreciation in the value of the property as the result of the change of grade and the construction and maintenance of the railway furnished the measure of compensation. . . . No good reason appears for holding that the rulings and instructions in regard to the measure of compensation were erroneous. The mere fact that the defendant was not invested with the power or right of eminent domain is not a sufficient warrant for condemning them. It is true that they were in accord with the settled rule for the ascertainment of compensation in a case where a corporation invested with the privilege of taking private property for public use has in the construction or enlargement of its works, taken, injured, or destroyed the property of another. But this rule is not necessarily limited to such cases. It may be applied in a case of permanent injury to real estate when the issue is between private persons. An illustration of this may be found in Williams v. Fulmer, 151 Pa. 405. In that case the plaintiff sought to recover from the defendant compensation for an injury to his property by reason of the diversion of the water of a navigable river from its natural channel in front of his land, and it was held that ' compensatory damages in such case would be the depreciation in value of the property, if the injury were permanent, or the cost of removing the obstruction, whichever was the lower amount.' "

We do not think it is necessary to enlarge further upon this point.    It is sufficient to say that the sound rule is, that where there is a permanent injury to real estate, the extent of the damage caused thereby is to be measured by the resulting depreciation in the value of the property.    Permanency of injury is the proper test for the application of this rule.

In so far as the property of the plaintiff in this case was permanently injured, the rule should have been applied.

The judgment is reversed and a venire facias de novo is awarded.