In re PAOLI RAILROAD YARD
PCB LITIGATION.

This Document Relates To:

Mabel BROWN

v.

SEPTA, et al.

K. Louise JONES, et al.

v.

SEPTA, et al.

James LAMENT

v.

SEPTA, et al.

Christopher BROWN, et al.

v.

SEPTA, et al.

Margherita BARBETTA

v.

SEPTA, et al.

Mary Retta JOHNSON

v.

SEPTA, et al.

John INGRAM, et al.

v.

SEPTA, et al.

William BUTLER, et al.

v.

SEPTA, et al.

Matthew CUNNINGHAM, et al.

v.

SEPTA, et al.

Nos. 86–2229, 86–5277, 86–5886, 86–7414, 86–7417, 86–7418, 86–7561, 87–2874 and 87–5269.

United States District Court,
E.D. Pennsylvania.

Nov. 13, 1992.

Harold E. Kohn, Robert A. Swift, Jeanne P. Wrobleski, Kohn, Savett, Marion & Graf, P.C., Joseph C. Kohn, Martin J. D'Urso, Kohn, Klein, Nast & Graf, P.C., Arnold E. Cohen, Klehr, Harrison, Harvey, Branzburg & Ellers, John, Innelli, Rudolph, Seidner, Goldstein, Salmon, P.C., Laurence S. Berman, Levin, Fishbein, Sedran & Berman, D. Bruce Hanes, Powell, O'Shea, Hanes & Minehart, Christopher S. Vaden, U.S. Dept. of Justice, Environmental Defense Section, Environmental & Natural Resources Div., Washington, DC, for Mabel Brown.

Anthony Sherr, U.S. Dept. of Justice, Torts Branch, Civil Div., J. Steven Rogers, Christopher S. Vaden, U.S. Dept. of Justice, Environmental Defense Section, Land & Natural Resources Div., Washington, DC, Steven Engelmyer and James G. Sheehan, Asst. U.S. Attys., Philadelphia, PA, for U.S.

Roger F. Cox, C. Gary Wynkoop, Benjamin G. Stonelake, Jr., Wei Wei Chu, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for SEPTA.

Mary C. Smith, David Richman, Laurence Z. Shiekman, Pepper, Hamilton & Scheetz, Philadelphia, PA, for CONRAIL.

Richard Kraemer, Suzanne H. Gross, Mary L. Grad, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, PA, and Mary L. Grad, Associate Gen. Counsel, National R.R. Passenger Corp., Washington, DC, for Amtrak.

G. Daniel Bruch, Jr. and Jeffrey B. McCarron, Swartz, Campbell & Detweiler, Philadelphia, PA, Raymond Paschke, Westinghouse Elec. Corp., Pittsburgh, PA, David Craig Landin and Terrence M. Bagley, McGuire, Woods, Battle & Boothe, Richmond, VA, for Westinghouse Elec. Co.

R. Thomas McLaughlin, Jennifer Berke, Kelly, Harrington, McLaughlin & Foster, Philadelphia, PA, for the Budd Co.

Michael H. Malin, Kathy A. O'Neill, Thomas Goutman, James D. Shomper, John C. Keir, White & Williams, Philadelphia, PA, Gerald H. Davidson, Smith, Helms, Mulliss & Moore, Greensboro, NC, for Monsanto Co.

Harry A. Short, Jr. and Stephen M. McManus, Liebert, Short & Hirshland, Francis F. Quinn and John W. Vardaman, Philadelphia, PA, Sarah Duggin, Joseph G. Petrosinelli, David C. Kiernan and John W. Vardaman, Williams & Connolly, Washington, DC, for General Elec. Co.

Timothy B. Barnard, Media, PA, for Roy F. Weston, Inc.

David G. Mandelbaum, Ballard, Spahr, Andrew & Ingersoll, Philadelphia, PA, for O.H. Materials Corp.

Robert A. Sutton, Asst. City Sol., City Solicitors Office, and Denise D. Colliers, Philadelphia, PA, for City of Philadelphia.

John J. Monsees, Blank, Rome, Cominsky & McCauley, Philadelphia, PA, for SEPTA and Penn Cent. Corp.

Charlotte E. Thomas, Arnold E. Cohen, Philadelphia, PA, for K. Louise Jones.

D. Bruce Hanes, Friedman & Hanes, P.C., Philadelphia, PA, for Christopher S. and Jacqueline Michell Brown.

Lauri Sussman Siegel, Zarwin, Baum, Resnick & Cohen, P.C., John Kohn, Martin J. D'Urso, Arnold Cohen, John Innelli and D. Bruce Hanes, Philadelphia, PA, for John

Ingram, Sr., John Ingram, Jr., and Patricia and April Ingram.

Geoffrey L. Beauchamp, Norristown, PA, and Martin J. D'Urso, Arnold Cohen, John Innelli and D. Bruce Hanes, Philadelphia, PA, for William and Theresa Butler, Marvin L., Allen K., Karen R. and Donald E. Simpson and Bryan M. Jackson.

Harold E. Kohn, Kohn, Savett, Klein & Graf, P.C., and Arnold E. Cohen, Philadelphia, PA, for James Lament.

D. Bruce Hanes, Friedman & Hanes, P.C., Philadelphia, PA, for Mary Retta Johnson and Margherita Barbetta.

Joseph C. Kohn, Philadelphia, PA, for Matthew and Bessie Cunningham.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PROPERTY DAMAGE CLAIMS

This Motion concerns nine Plaintiffs who allege damage to their properties from the presence of polychlorinated biphenyls ("PCBs") in and around the Paoli Railyard (the "Yard") in Paoli, Pennsylvania. PCBs were an ingredient of the fire resistant dielectric fluid used in the electrical transformers attached to the underside of the railroad cars which were serviced and maintained at the Yard. Plaintiffs' expert, Barry Ludwig, opined that Plaintiffs' properties have been devalued as a result of being located near the Yard.

Upon consideration of Defendants' Motion for Summary Judgment on Plaintiffs' property claims and all responses thereto, this Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. In 1986, due to a perceived environmental threat, the United States Environmental Protection Agency ("EPA") excavated soil from certain residences near the Yard which was allegedly contaminated with PCBs. SEPTA by consent agreement with EPA has also undertaken remedial actions on the Yard itself.

2. Plaintiffs' properties have been the subject of cleanup pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*

3. In 1987, EPA, SEPTA, Conrail and Amtrak entered into an Administrative Order by Consent under which a Remedial Investigation/Feasibility Study was conducted.

4. In March of 1992, EPA published its *Proposed Plan—Paoli Rail Yard Superfund Site* ("Proposed Plan") in which it lists various alternative remedies for the areas of alleged contamination. Under this Proposed Plan, EPA has remediated and/or will remediate the alleged contamination on Plaintiffs' properties and the Yard. EPA is still in the process of cleaning up Plaintiffs' properties in order to further reduce the levels of PCBs in the soil.

5. Plaintiffs admitted at their depositions that they have not incurred any costs associated with the remediation of their properties which has been undertaken by EPA through replacement of soil on the residential properties to reduce PCB levels.

6. Not one Plaintiff claims to have sold property and received a lower price than he or she would have received if the property had not had detectable PCB levels.

7. Plaintiffs designated Barry Ludwig as their expert witness on property damages and produced: B. Ludwig, *The Impact on Residential Values of Proximity to the Paoli Railroad Yard* (March 17, 1992). Plaintiffs' alleged property damages include the following: (1) loss in marketability and market value from the fact that PCBs have contaminated their properties; and (2) an alleged decrease in property values due to the "stigma" attached to Plaintiffs' properties due to their proximity to the Yard even if the properties are eventually satisfactorily cleaned up.

## CONCLUSIONS OF LAW

1. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judg-

ment may be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ 2. This Court must view the record in a light most favorable to the party opposing the motion for summary judgment. *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). The moving party is entitled to summary judgment where no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the non-moving party. *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.,* 595 F.Supp. 800, 802 (E.D.Pa.1986) (citations omitted).

■ 3. Once the movant has established the absence of a genuine issue of material fact, Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

4. "The purpose of damages for injury or destruction of property by tortious conduct of another is to compensate the injured owner for the actual loss suffered." *Babich v. Pittsburgh & New England Trucking Co.,* 386 Pa.Super. 482, 563 A.2d 168, 170 (1989). The method of computing property damage under Pennsylvania law is as follows:

> the cost of repairs where that injury is reparable unless such cost is equal to or exceeds the value of the injured property. Where the cost of repair does exceed the value of said property, the cost of damages becomes the value of the property. Where, however, the injury is deemed to be permanent, the measure of damages becomes the decrease in the fair market value of the property.

*Kirkbride v. Lisbon Contractors, Inc.,* 385 Pa.Super. 292, 560 A.2d 809, 812 (citations

omitted), *rev'd on other grounds,* 555 A.2d 800 (Pa.1989); *Rabe v. Shoenberger Coal Co.,* 213 Pa. 252, 62 A. 854 (1906).

■ 5. Under Pennsylvania law, the cost of remediating harm to property is the exclusive measure of damages where the harm is temporary and remediable. The court in *Kirkbride* stated that:

> In *Lobozzo v. Adam Eidemiller, Inc.,* 437 Pa. 360, 263 A.2d 432 (1970), the Pennsylvania Supreme Court specifically noted that, with regard to remedial damage to realty, a plaintiff may recover only the cost of repair or restoration without regard to the diminution in value of the property. In making its determination, the Court looked to the holding of *Rabe* ... which unequivocally held that where an injury is reparable, the damage is the cost of repair or restoration.

*Kirkbride,* 560 A.2d at 813 (citation omitted).

■ 6. Since EPA has removed and/or will remove the PCBs from Plaintiffs' properties, Plaintiffs have not incurred and will not incur any costs relating to the remediation of their properties. Plaintiffs admitted in their depositions that they have not expended any funds for the removal of PCBs from their properties. The alleged contaminants, PCBs, are being removed through soil replacement by EPA. *See Proposed Plan* (March, 1992). Therefore, I conclude that summary judgment must be entered in favor of Defendants to the extent that Plaintiffs seek damages for temporary or reparable harm to their properties.

■ 7. Under Pennsylvania law, damages for permanent harm are reserved for cases in which the property has suffered such significant harm that it cannot possibly be remediated. The court in *Ridgeway Court, Inc. v. Landon Courts, Inc.,* 295 Pa.Super. 493, 442 A.2d 246, 248 (1981) stated that:

> The rule applying damages for the correction of problems rather than merely compensating a diminution in value serves several public policies. Compensating for diminution rather than correc-

tion would tend to lower property values of lands affected with injury to both the taxing authority and the surrounding property areas. In this case, to leave a swampy area uncorrected could lead to health problems associated with stagnant waters.

■ 8. There is a presumption in Pennsylvania that harm to property is temporary and remediable. *See Kirkbride*, 560 A.2d at 812–13. Permanent damage has been found by the Pennsylvania courts in only the most extraordinary situations. For example, in *Rabe v. Shoenberger Coal, Co.*, 213 Pa. 252, 62 A. 854 (1906), the defendant owned the subjacent coal rights on the plaintiff's property. During its mining activities, the defendant "injured a portion of the surface for building purposes, interfered with the use of a private road, damaged the dwelling house, and destroyed certain springs of water." *Id.* at 255, 62 A. 854. The Court concluded that only the destruction of the springs and the harm to the surface that rendered it less available for building were permanent and irreparable. The Court stated that the "sinking of the dwelling house and the opening of cracks across the private right of way, were remediable." *Id.* at 255–56, 62 A. 854; *see also Hoffman v. Berwind–White Coal Mining Co.*, 265 Pa. 476, 109 A. 234 (1920) (permanent harm caused by mining company that failed to provide adequate subjacent support for the plaintiff's property, "with the result that the surface settled and cracked, causing the loss of streams of water, springs and wells on plaintiff's land, thereby greatly depreciating its value for farming, dairying, stock-raising and fruit growing").

■ 9. In order for a court to conclude that harm to a property is permanent and irreparable, a plaintiff must establish either that: (1) the harm was caused by a *de facto* taking; or (2) the harm is "unequivocally beyond repair." *Id.* 560 A.2d at 812. Thus, Plaintiffs may not recover for any alleged permanent depreciation in the value of their properties unless they can establish a *de facto* taking or that their properties are unequivocally beyond repair. Plaintiffs in this case have not alleged that there has been a *de facto* taking of their properties.

10. EPA has concluded that any alleged contamination is not permanent and can and will be remediated. In its Proposed Plan, EPA identifies five areas of alleged contamination that it plans to remediate in and around the Yard at a cost of more than $25,000,000.00:

| AREA OF ALLEGED CONTAMINATION | PREFERRED ALTERNATIVE REMEDY | PRESENT WORTH |
| --- | --- | --- |
| Railyard soil | 5A—excavation and on-site treatment with stabilization/solidification | $16,266,700.00 |
| Groundwater treatment and fuel oil recovery | 1—fuel oil recovery and groundwater treatment | $1,131,120.00 |
| Railyard buildings and structures | 3—decontamination | $731,905.00 |
| Residential and other soil | 3—excavation and treatment of residential soils | $1,196,000.00 to $1,606,755.00 |
| Stream sediments | 4—excavation and treatment of sediments with PCB concentrations exceeding 1 ppm | $5,701,720.00 to $5,909,220.00 |

*See Proposed Plan* (March, 1992).

11. Plaintiffs in this case have failed to present any evidence that their properties are unequivocally beyond repair. Although Plaintiffs contend in their memorandum in response to Defendants' motion for summary judgment that their property has sustained permanent harm and continues to pose a risk of harm, Plaintiffs have failed to submit anything beyond the pleadings to establish that the alleged harm is other than temporary and remediable. Plaintiffs argue that EPA's Proposed Plan is inadequate to achieve the degree of safety EPA claims and inadequate for remediating the damage to their properties. Moreover, Plaintiffs maintain that summary judgment is not appropriate since EPA may not actually effect the remedies identified in its Proposed Plan.

12. Plaintiffs cannot proceed with property damage claims that are based on mere speculation that EPA's remedies will not be effective. Plaintiffs have not produced any evidence that suggests that EPA will not effect the proposed remedies. Plaintiffs argue that one of their experts, Melvyn Kopstein, Ph.D., opined that EPA's proposed cleanup is totally inadequate to repair the physical damage to Plaintiffs' properties. This statement is purely speculative. Even if Dr. Kopstein is correct in his belief that EPA may not remove all the contamination to Plaintiffs' properties, he fails to support his opinion with any evidence that PCBs at these possible future levels pose a physical or health threat. Moreover, regarding Dr. Kopstein, although this Court denied Defendants' Motion *In Limine* to Exclude the Testimony of Dr. Kopstein, he was offered by Plaintiffs for the limited purpose of establishing Plaintiffs' "opportunities for exposure" to PCBs. *See* This Court's Order dated October 21, 1992.

13. Accordingly, Plaintiffs have failed to present any evidence of permanent harm and summary judgment must be entered in favor of Defendants.

14. Plaintiffs also argue that alleged groundwater contamination presents a threat of future harm and is permanent harm under *Wade v. S.J. Groves & Sons Co.*, 283 Pa.Super. 464, 424 A.2d 902 (1981). Plaintiffs claim that contaminated groundwater on the PCB contaminated area could come onto Plaintiffs' properties and could decrease its value. While the court in *Wade* affirmed the award of permanent damages for the devaluation of the plaintiffs' property based on a real and permanent threat of future harm, the present situation is considerably different. Unlike the plaintiffs in *Wade*, Plaintiffs in this case presented no evidence outside the pleadings that any harm has ever been caused to Plaintiffs' properties from the alleged groundwater contamination or that it poses a future threat of harm. Plaintiffs' expert, Barry Ludwig, based his opinion on pure "stigma" damages not damages as a result of alleged future physical threats of harm. Furthermore, EPA's Proposed Plan indicates that PCBs "were not detected in groundwater." *Proposed Plan* at 3. Plaintiffs have failed to present any evidence with respect to alleged future threat of harm. Thus, Plaintiffs have failed to meet their burden and summary judgment in favor of Defendants is appropriate.

15. Plaintiffs further claim an alleged decrease in property values due to the "stigma" attached to Plaintiffs' properties due to their proximity to the Yard. Plaintiffs' expert, Barry Ludwig, based his opinion solely on "stigma" damages which assumes market depreciation where there is unfavorable public perception even where there is no permanent physical damage.

16. As previously stated, the purpose of damages for injury to property is to compensate the injured owner for the **actual loss suffered.** *Babich*, 563 A.2d at 170 (emphasis added).

17. Plaintiffs have offered no legal support for their claim of "stigma" damages under Pennsylvania law. Plaintiffs have failed to cite any authority which determines that decreases in property values due to mere proximity to a site containing perceived hazardous chemicals is compen-

sable in Pennsylvania. This Court concludes that Pennsylvania along with many other jurisdictions would not recognize a claim for "stigma" damages. Therefore, as a matter of law, summary judgment is entered in favor of Defendants on Plaintiffs' claims for "stigma" damages.

18. As a matter of law, I find that any alleged harm to Plaintiffs' properties may be remediated and is temporary. EPA has been and will be remediating these properties. Plaintiffs have not and will not incur any costs associated with the remediation of their properties. In addition, Plaintiffs' own expert, Barry Ludwig, did not state in his report or during his deposition that any harm to Plaintiffs' properties is permanent. *See* B. Ludwig, *The Impact on Residential Values of Proximity to the Paoli Railroad Yard* (March 17, 1992). Moreover, Plaintiffs have presented no evidence with respect to threat of future harm. Plaintiffs have made a record only for an award of "stigma" damages which I find are not recoverable in Pennsylvania.

Therefore, I shall enter the following Order:

### ORDER

AND NOW, this 13th day of November, 1992, upon consideration of Defendants' Motion for Summary Judgment on Plaintiffs' Property Damage Claims, and all responses thereto, it is hereby ORDERED that said Motion is GRANTED. Therefore, judgment shall be enter in favor of Defendants and against Plaintiffs.

### ORDER

AND NOW, this 13th day of November, 1992, upon consideration of Defendants' Motion *In Limine* to Exclude the Testimony of Barry Ludwig and all responses thereto, it is hereby ORDERED that said Motion is DENIED as moot.