Schlichtkrull *v.* Mellon-Pollock Oil Co. (No. 1), Appellant.

Schlichtkrull et al. *v.* Mellon-Pollock Oil Co., Appellant.

554

[redacted]

Argued October 2, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*George D. Wick,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellant.—The court's error lay in assuming injury was permanent when record shows otherwise and that appellee could not compel appellant to plug an abandoned oil well: Glasgow v. Altoona, 27 Pa. Superior Ct. 55; Hughes v. General Electric L. & P. Co., 54 Southwestern R. 723; Seely v. Alden, 61 Pa. 302; Hoffman v. Coal Co., 16 Pa. Superior Ct. 631.

Judgment non obstante veredicto should have been entered in this case: Williams v. Ladew, 161 Pa. 283; Wheatley v. Baugh, 25 Pa. 528; Collins v. Gas Co., 131 Pa. 143; Pfeiffer v. Brown, 165 Pa. 267.

*Clyde A. Armstrong,* with him *Charles M. Thorp, Jr.,* of *Thorp, Bostwick, Stewart & Reed,* for appellees.—The injuries to appellees' properties are permanent in the eyes of the law: Shaffer v. Penna. Co., 265 Pa. 542; Steere v. Twp., 83 Pa. Superior Ct. 234; Duffield v. Rosenzweig, 144 Pa. 520; Pittsburgh & Lake Erie R. R. v. Jones, 111 Pa. 204; South & North Alabama R. R. v. McLendon, 63 Alabama 266.

There are numerous illustrations in our appellate courts of what amounts to a nuisance and where equitable injunctive relief will be granted. The following cases are all cases of this character involving continued negligence or repeated unlawful acts: Haugh's App., 102 Pa. 42; Hawk v. Davis, 76 Pa. Superior Ct. 565; Hauck v. Pipe Line Co., 153 Pa. 366; Keiser v. Gas Co., 143 Pa. 276; Stokes v. R. R., 214 Pa. 415; Gavigan v. Refining Co., 186 Pa. 604.

Judgment n. o. v. was properly refused: Collins v. Gas Co., 131 Pa. 143; Collins v. Gas Co., 139 Pa. 111.

OPINION BY MR. JUSTICE SADLER, November 24, 1930:

Three tenants in common, plaintiffs in this case, owned a small farm in Pine Township, Allegheny County, containing about nine acres, having thereon a frame house with a water well under the kitchen. In 1920, oil was discovered on an adjoining property and drilling operations were begun. The same year defendant took several leases on adjacent land, and acquired also the right to enter on the plaintiffs' farm, and did construct the well known as Aronson No. 1. During the three years succeeding, several others were opened in close proximity by different prospectors, one within 200 feet of the Schlichtkrull home, and some across an inter-

vening stream, of about the same level as the well in question, and into which waste water found its way, but on the opposite slope. In 1922, after the first Aronson drilling, salt appeared in the well water, but, after complaint, and the installation of proper drainage, this condition was corrected. During the summer of 1925, the defendant caused a second boring to be made, 988 feet from the house, and with which we are concerned in the present proceeding. It was driven through the bluff or fresh sand some 80 feet from the surface, but as no water then appeared, it was continued to a much lower depth, without the insertion of any casing, as some witnesses testified was customarily done to prevent the salt water, —reached at lower levels,—coming in contact with the fresh, which passed through the strata above. In failing to so protect from possible contamination, the jury has found on disputed testimony that defendant failed to exercise due care.

In 1926 the well water became salty and bitter, and so continued until the time of bringing this suit. It was claimed that a permanent injury to the land resulted, for which loss damages were asked. An expert for plaintiffs, by the use of a violet dye inserted at the point of drilling, disclosed some connection between the salty water there present and the contents of the well, though differing in other chemical contents, as shown by an analysis, and the jury was justified in finding that the water passed in some way through the ground from one point to the other. Other wells on the farther slope also produced salt water, as in the case of the one located on the Utes property on the opposite side of the stream. No connection between them and the house water supply appeared from the evidence produced. The operation last mentioned had been in use for 20 years, during part of which time at least the water of plaintiffs was in good condition, not having become again polluted until 1922, and later in 1926, after the Aronson No. 2 was drilled.

In passing on the complaint here made, we have in mind the established principle, that interference with subterranean waters seeping into private wells shall be treated as damnum absque injuria, where no negligence causing the injury is found, but that a recovery may be had where the loss is shown to have resulted from the failure to use due care: Collins v. Chartiers V. Gas Co., 131 Pa. 143, 160, s. c. 139 Pa. 111. In this case, the earlier decisions are discussed, and the rule stated thus: "[If] there is evidence from which the jury could fairly find that the defendant, when the well was drilled, knew, or ought to have known, if [it] had exercised any reasonable judgment, or investigated or paid attention to it, that the boring of this well in the way it was done, without shutting off the salt water from the fresh water, would almost inevitably ruin these and other wells in the immediate vicinity [damages may be recovered]. And I think there is evidence from which the jury could fairly find that the defendant could, with the outlay of a small amount of money, have shut off the salt water from the fresh water so that it could not have done any injury...... If the plaintiff showed that the injury was plainly to be anticipated, and easily preventable with reasonable care and expense, he brought himself within the exception of all the cases." See also Pfeiffer v. Brown, 165 Pa. 267. In view of the findings of the jury, based on sufficient evidence, but two matters need consideration on this appeal.

The substantial question raised is the proper measure of the compensation to be allowed. In the statement of claim, a permanent injury to the land was asserted and not denied in the affidavit of defense, though this averment was not required in such a pleading. The case was tried, without objection by defendant, on the theory that the difference in the market value of the property as a whole, before and after the injury to the well, was the proper method by which the loss should be estimated. No points suggesting the application of a contrary rule

were presented by appellant, and it was not until the motion for a new trial that it was urged a different test should be applied. It is of course true that damages done by a trespasser, or the one conducting a nuisance, is limited to compensation for the injury at the time inflicted, for the continuance of such wrongdoing may be restrained (as illustrated by Seely v. Alden, 61 Pa. 302; Stokes v. P. R. R. Co., 214 Pa. 415; Williams v. Ladew, 161 Pa. 283), and the existence of a permanent injury is not to be presumed: Hoffman v. Coal Co., 16 Pa. Superior Ct. 631. It was said in Duffield v. Rosenzweig, 144 Pa. 520, 540: "As a general rule, where it is practicable, or the extent of the wrong may be apportioned from time to time, the plaintiff is entitled to damages to the commencement of the suit, and successive actions may be brought as long as the wrongful conditions continue or the obstruction is maintained: Bare v. Hoffman, 79 Pa. 71. But, where the extent of the wrong is not thus apportionable, or the injury is of a permanent character, the damages may be assessed in a single action."

"If the injury is caused by erecting a structure or making a use of land which the defendant has a right to continue, the injury is regarded as committed once for all, and action must be brought to recover the entire damage, past and future": Shaffer v. Penna. Co., 265 Pa. 542. Where the continuance of a lawful business causes the harm, the injury will be considered permanent (Steere v. Harford Twp., 83 Pa. Superior Ct. 234), and it will be treated as such where the reasonable supposition is that it will be carried on (Miller v. Hanover Water Co., 240 Pa. 393; Truby v. American Natural Gas Co., 38 Pa. Superior Ct. 166), a question usually for the jury: Hoffman v. Berwind-White Coal Mining Co., 265 Pa. 476; Shaffer v. Penna. Co., supra; Matteson v. N. Y. C. & H. R. R. R. Co., 40 Pa. Superior Ct. 234. If the injury is temporary, or it appears the harm may be reasonably repaired, and such course will be undertaken, a different rule applies (Rabe v. Shoenberger

Coal Co., 213 Pa. 252), but proof of mere possibility of the correction of the cause is not sufficient to alter the rule first stated: Glasgow v. Altoona, 27 Pa. Superior Ct. 55. It will be noticed that appellant's sole witness as to damages fixed the loss upon the depreciation of market value, and that the complaint that the damage was not permanent first appears after rendition of the verdict.

Defendant did offer during the trial to show the Aronson Well No. 2, complained of, was no longer a paying proposition, and that it was the purpose of the oil company to abandon it within six months, in which event it would be plugged, as provided by the Act of May 26, 1891, P. L. 122, or if defendant failed to perform that duty, the plaintiff could require that it so proceed, under the third section of the statute referred to. There was, however, no offer to show that the result of such action would be to restore the property to its former condition, nor to prove that the plugging would prevent the continued rise of the salt water in the uncased hole, thus preventing its coming in contact with the fresh, which passed through the intervening land to the well, or, if so, the length of time that would be required to accomplish this result. The proposed testimony, indicating a purpose to close the oil boring in the near future, was insufficient.

A review of the record leads to the belief that the liability of defendant was properly established, the correct measure of damages applied, and the offer to show an intention to cease the wrongdoing, so as to limit the amount of the recovery, was insufficient, and therefore the assignment of error directed to the refusal of the evidence tendered to show the fact last referred to must be overruled.

The judgment is affirmed.