## Carl Bales Excavating Inc. v. Strawberry Hill Associates LP

C.P. of Lehigh County, no. 2007-C-3991.

*Konrad B. Jarzyna,* for plaintiff.
*Charles E. Shoemaker, Jr.,* for defendant.

McGINLEY, *J.,* August 4, 2010—Redles I Irrevocable Trust appealed our May 17, 2010 order denying its motion for post-trial relief. We write this opinion to explain our reasons for that order.

Redles, the counterclaim plaintiff, brought suit against Carl Bales Excavating Inc., the counterclaim defendant, for trespass for the destruction of a stand of trees on property owned by Redles. A non-jury trial was held on January 5 and 6 of 2010. On January 8, 2010, we found in favor of Redles and against Bales in the amount of $0.[1] A footnote in the verdict stated:

"The proper measure of damages is 'the decrease in fair market value of the property.' *Richards v. Sun Pipe Line Co.,* 431 Pa. Super. 429, 636 A.2d 1162 (1994). Counterclaim plaintiff has failed to make out the elements

---

1. The verdict also found in favor of Bales and against Strawberry Hill Associates LP in the amount of $6,000 plus interest and costs for an unpaid bill for excavation work based on the parties' stipulation.

which might support the measure set forth in Restatement 929. The removed trees did not affect the counterclaim plaintiff's privacy, merely his conditional anticipation of privacy in some unspecified future."

Redles filed a motion for post-trial relief. The parties briefed the matter, argument was heard and we denied Redles' motion on May 17, 2010. Redles appealed that order.

Although Redles raises eight matters complained of on appeal, they all stern from whether the proper measure of damages was applied in this case.[2] The issue is whether the proper measure of damages was the difference in fair market value before and after the trespass or the cost of restoration.

## FACTS

Bales is engaged in the business of excavation and related ground clearing. (Stipulation, para. 1.) Redles is the owner of a parcel of approximately 17.96 acres in Upper Saucon Township, Lehigh County, Pennsylvania. (Stipulation, para. 2.) The Redles Trust became the owner of the property in January 2007 when title to the property was conveyed to the trust from Kenneth A. and Linda J. Redles, settlers who had owned the property since October of 1996. (Stipulation, para. 3.) In July of 2006, Strawberry Hill Associates LP, acting as the agent of Redles, contracted with Bales to install four sewer laterals on the Redles property. (Stipulation, para. 5.) Bales completed that work and the parties have stipu-

---

2. We note that the finding of trespass has not been appealed.

lated that Strawberry Hill Associates LP is indebted to Bales for the remainder of the contract price in the amount of $6,000. (Stipulation, para. 7.)

In 2006, after request of Upper Saucon Township, Mr. and Mrs. Redles agreed to grant a 30-foot wide easement through a forested portion of their property to permit the installation of sewer lines for the benefit of a property adjoining the Redles' property. (Stipulation, para. 8.) In consideration for such easement, the township agreed that it became contractually obligated to restore the burdened property to its prior condition, specifically to replant trees in the wooded area in kind to those removed during the work. (Stipulation, para. 11.) Carl Bales Jr., the company coordinator of Carl Bales Excavating Inc., agreed during his testimony that the right-of-way was 30 feet wide, but his company cleared an area of 40 to 55 feet in width. (N.T. 1-6-10, p. 32.)

Gerald Newnam, the nursery manager of Green Tree Nurseries, testified regarding the proposal he had drafted after the trespass to reforest the property cleared in excess of the 30 feet. He testified the property would need the following:

"40 deciduous trees, hardwood trees, various species of what we have on the nursery such as red native, red maples, native oak, native ash, native elm trees. And the cultivars to fill in the gaps of what material we do have in the nursery. We would have to use some cultivars which would be—like a red sunset is a cultivar of the native red maple.

"And your native species, I just went over, the seven to 10-inch caliper refers to the size of the trees that will be planted in that place. Park or conservation-grade,

again, giving it as much of a natural look that it originally had before the trees were cut down or were knocked down or whatever they were. Then it has a native average at $2,600 per tree times 40, the number of trees to be replaced plus the tax." (N.T. 1-5-10, p. 26.)

The total estimate to restore the property was $135,839. (N.T. 1-5-10, p. 28.) He further testified about how the restored portion would look compared to the adjoining woods:

"Well, you can never get it back to specifically what it was. We can get it close. Once the trees establish themselves, it should start to blend in within a few years. It will probably look—if you were just glancing, passing by, maybe in ten years, you wouldn't even know there was any damage in there at all. (N.T. 1-5-10, p. 26-27.)

## Discussion

The law regarding the proper measure of damages has been set forth in *Richards v. Sun Pipe Line Company,* 431 Pa. Super. 429, 636 A.2d 1162 (1994). In *Richards,* the homeowners brought an action to recover damages for permanent injury caused to their property when a company removed and trimmed trees in order to inspect and maintain a gas pipeline running across their property. The court stated that "the measure of damages for injury to property, where the injury is deemed to be permanent, is the decrease in the fair market value of the property." *Id.* at 433, 636 A.2d at 1163-64. (citations omitted) The *Richards* court, quoted our Supreme Court, which stated:

"[W]e have on numerous occasions decided that, when standing timber is destroyed, the damages therefor are

to be measured by determining the difference in the value of the land, upon which the trees grew, before and after the injury complained of. There may be exceptional instances, when the evidence shows the trees in question to have had a selling value separate and apart from the land (for example, trees growing on a nursery farm), where a different rule would apply; but, under the facts at bar, there can be no doubt that the proper way to determine the pecuniary damage suffered by the destruction of plaintiff's trees was through the application of the ordinary rule just referred to . . . ." *Id.* at 433-34, 636 A.2d at 1164, quoting, *Ribblett v. Cambria Steel Company,* 251 Pa. 253, 259, 96 A. 649, 652 (1916). (citations omitted)

Redles, like the homeowners in the *Richards* case, relied on *Gross v. Jackson Township,* 328 Pa. Super. 226, 476 A.2d 974 (1984) and *Bell v. Shetrom,* 214 Pa. Super. 309, 257 A.2d 323 (1969), for the proposition that:

"We have grave doubts that damage to trees can be ascertained only by showing the before and after values of the land on which the trees were growing . . . . Whatever approach is most appropriate to compensate for the harm should be used, including perhaps the intrinsic value of the trees to the then existing use of the land or the cost of replacement or restoration. Even if the before and after value of the land is an appropriate measure of damages, evidence would be competent as indicative of the diminution of the value of the land." *Gross, supra* at 229, 476 A.2d at 976, quoting *Bell, supra* at 312, 257 A.2d at 324.

The *Richards* court distinguished *Gross* and *Bell* because the damage in those cases was not permanent in

nature. "In *Gross, supra,* the plaintiffs intended to replant the hedges and shrubs that were destroyed. Therein, the intrinsic, *i.e.,* actual, value of those plants was relevant to determine the cost of the restoration (or repair) which is the proper measure of damages when the injury is not permanent." *Richards, supra* at 435, 636 A.2d at 1164.

The court went on.

"We note, however, that to the extent *Bell, supra,* may be interpreted as permitting the use of intrinsic value of trees as indicative of the diminution in the value of the land, such an interpretation is not only based upon mere dicta, but also is in direct conflict with Supreme Court precedent. See *Sgarlat Estate v. Commonwealth,* 398 Pa. 406, 414, 158 A.2d 541, 545 (1960) ("It is the fact of such loss, not its actual statement in dollars that is the permissible element affecting damage."); *Rabe v. Shoenberger,* 213 Pa. 252, 256, 62 A. 854, 855 (1906); *Ribblett, supra; Schlichtkrull v. Mellon-Pollock Oil Co.,* 301 Pa. 553, 152 A. 829 (1930). Thus, we restate herein the long-established rule that, when the damage to property is permanent, the measure of damages is the reduction in fair market value of the land. *Rabe, supra.* To the extent that the trees on [homeowners'] property were destroyed, it is the *fact that the trees were destroyed* that was relevant to determining damages, *not the actual dollar* value of those trees since those trees did not have a selling value separate and apart from the land. *Ribblett, supra.*" *Id.* at 435-36, 636 A.2d at 1165. (emphasis in original)

In applying the *Richards* decision to this case, it is necessary to first determine whether the injury to the subject property was permanent in nature. Although the permanent nature of the injury in *Richards* was not disputed because the trees could not be replaced within the

easement, the court went on to state that even if the trees were replaced it would be 25 to 30 years before they attained the same stature as those removed. *Id.* at 435 n.1, 636 A.2d at 1164 n.1.

In this case, Mr. Newnam testified that they are attempting to replace natural forestation; natural growth that has been there for probably centuries. (N.T. 1-5-10, pp. 23-24.) He testified that restoration was impossible because it is old-growth trees versus new-growth trees. (N.T. 1-5-10, p. 27.)

We find that the removal of the trees outside of the easement constitutes permanent injury to the property. It is impossible to replace what was lost. The exact number of trees is unknown, and although an attempt could be made to make the property look similar to how it existed prior to the trespass, it would not be exact and it would take many years for the trees to blend in and reach the proper height.

Because we find the trespass caused permanent injury to the property, the proper measure of damages is the decrease in the fair market value of the property. *Richards, supra.* There was absolutely no evidence presented as to the fair market value of the property. Redles failed to establish the fair market value of the property and how the value of the property decreased as a result of the removal of the trees outside of the easement.

Instead, Redles elected to rely on the Restatement (Second) of Torts §929[3] in an attempt to recoup restoration damages. We found no authority that the Restatement

---

3. Restatement (Second) of Torts §929 provides the compensatory damages for harm to land from past invasions. It provides:

(Second) of Torts §929 has been adopted as the measure of damages in Pennsylvania and we decline to apply that measure of damages to this case.

---

"(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

"(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,

"(b) the loss of use of the land, and

"(c) discomfort and annoyance to him as an occupant.

"(2) If a thing attached to the land but severable from it is damaged, he may at his election recover the loss in value to the thing instead of the damage to the land as a whole."

The comments to section 929 include, in part, the following:

"(a) One whose land has been damaged is entitled to compensation for the difference between its value before and after the harm. If only a portion of a tract of land has been directly harmed, the diminished value of the entire tract is considered . . . .

"(b) Restoration. Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. Thus if a ditch is wrongfully dug upon the land of another, the other normally is en titled to damages measured by the expense of filling the ditch, if he wishes it filled. If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. This would be true, for example, if in trying the effect of explosives, a person were to create large pits upon the comparatively worthless land of another.

"On the other hand, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion."

38

We note that in Redles' attempt to establish damages pursuant to the Restatement, and specifically in attempting to establish his personal reason for restoring the original condition, Mr. Redles testified to the anticipated privacy the property would provide to his future home. We did not find Mr. Redles' testimony credible and specifically did not believe his testimony that he did not plan to subdivide his property. (N.T. 1-5-10, pp. 95-96.) The installation of four sewer laterals in the excavated area is evidence of his intent to subdivide.

Because Redles only provided evidence regarding the cost of restoration, and not the decrease in fair market value of the property, we were unable to award damages.